# No. 23-5988

IN THE

# United States Court of Appeals for the Sixth Circuit

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

— v. —

LUIS COLINDRES,

*Defendants-Appellee*

---

On Appeal from the United States District Court
for the Middle District of Tennessee
Case No's. 3:18-cr-00200, 3:18-cr-00293

---

**APPELLANT'S PRINCIPAL BRIEF**

---

Agatha M. Cole
BEVERLY PLLC
43 West 43rd Street, Suite 159
New York, NY 10036

*Counsel for Defendant- Appellant, Luis Colindres*

# Table of Contents

REQUEST FOR ORAL ARGUMENT ....................................................... 1

QUESTION PRESENTED .................................................................... 2

STATEMENT OF THE CASE ................................................................ 3

STANDARD OF REVIEW ..................................................................... 8

ARGUMENT ........................................................................................ 9

    I.    **_MIRANDA_ WAIVERS DO NOT EFFECTUATE A WHOLESALE RELINQUISHMENT OF DEFENDANTS' FIFTH AMENDMENT RIGHTS**

CONCLUSION ..................................................................... 17

# REQUEST FOR ORAL ARGUMENT

This case presents important legal questions regarding the scope of a defendant's rights under the Fifth Amendment that this Court has not yet had the occasion to consider since the Supreme Court's decision *Corley v. United States,* 556 U.S. 303 (2009). Appellant respectfully submits that oral argument upon questioning before the Court would likely aid in the resolution of the issue.

## **QUESTION PRESENTED**

Does a valid *Miranda* waiver inoculate otherwise tainted evidence from constitutional challenge?

## STATEMENT OF THE CASE

Appellant Luis Colindres was born on March 25, 1997, in the rural department of Olancho, Honduras. Dkt. 432-4 at Page ID # 2007-09. He attended school until age 15, receiving the equivalent of a middle school education at Centro De Educacion Basica ("CEB") Manuel Bonilla—and then briefly served in the Honduran military before migrating to the United States before migrating to the United States at age 19.

The record reflects that Appellant first settled in California on or around July 4, 2016, and then moved to Nashville, Tennessee towards the end of December 2016, after visiting relatives who lived there for the holidays.

This appeal stems from his conviction on a conspiracy indictment, following a prolonged joint federal-state investigation into violent crimes attributed to the Mara Salvatrucha ("MS-13") gang in and around the Nashville area.

Appellant's name was added to the long list of targets in that investigation when the principal suspect in a double homicide—

seeking to exculpate himself by implicating someone else—gave his name to detectives at the Metro Nashville Police Department ("MNPD"). *See* Affidavit of Det. Baltimore (Sept. 29, 2017) (unsigned) [Dkt. 396-1, at Page ID # 1332].

Several days later, on October 9, 2017, Appellant was arrested and detained on ostensibly unrelated charges stemming from a routine traffic stop in Hopkinsville, Kentucky—but the circumstances surrounding that arrest are not entirely clear. The record suggests that Appellant was pulled over for driving 17 miles over the speed limit and subsequently arrested on drug-related charges after a search of the vehicle produced a small amount of cocaine.[1] In briefing before the district court, however, prosecutors represented that the Kentucky State Trooper also charged him with

---

[1] The docket sheet from the Kentucky state court proceedings [Dkt. 80-1, Page ID # 254-255] shows that Appellant was charged with: (1) possession of a controlled substance, KY Rev Stat § 218A.1415; (2) tampering with physical evidence, KY Rev Stat § 524.100; (3) drug paraphernalia, KY Rev Stat § 218A.500; (4) expired registration plates, KY Rev Stat § 186.10; (5) failure to produce insurance card, KY Rev Stat § 304.39-117; (6) improper lane usage, KY Rev Stat § 189.300; (7) Speeding at 17 MPH over the limit, KY Rev Stat § 189.390; and (8) failure to wear a seatbelt, KY Rev Stat § 189.125.

being a "fugitive" on an outstanding arrest warrant relating to the homicide investigation out of Nashville. Gov't Br. at Dkt. 65 at Page ID # 242-43, No. 18-cr-200 (M.D. Tenn. Nov 14, 2019).[2]

For reasons that are equally unclear from the record, Appellant was held in the custody of state officials at the Christian County Detention Center for an inexplicably prolonged period (15 months) after that arrest.[3]

During that time period, federal and state agents had unfettered access to Appellant, which they seized as an opportunity to elicit hundreds of pages worth of recorded testimonial statements—outside the presence of his attorneys—at the Kentucky detention facility where he was being held.[4]

---

[2] The only document offered in support of that assertion is an unsigned affidavit prepared in support of an application for said arrest [Dkt. 396-1, Page ID # 1332], which shows no indication of ever actually having been filed in the Metropolitan General Sessions Court of Nashville.

[3] The record suggests that the Kentucky state court approved cash bail in the amount of $10,000 on December 1, 2017 [Dkt. 80-1, Page ID # 254-255].

[4] It is undisputed that Appellant signed a form *Miranda* waiver at the beginning of each interrogation.

Perhaps the most shocking aspect of these interrogations, however, is not necessarily the conduct of those officers who procured the controversial statements—but the extent to which federal prosecutors condoned, and even, arguably, encouraged law enforcement to do so under the guise of sound legal judgment.

Despite knowing that Appellant was represented by counsel, prosecutors advised agents that all of this was constitutionally kosher, so to speak, because Appellant had not yet been formally indicted on anything outside of Kentucky.

As HSI Special Michael Agent Perez later recounted, they just said to avoid "talk[ing] about the Kentucky charges" since "he was [already] represented by an attorney" in connection with those offenses:

```
Q. Did you have a conversation with … members of
the prosecution team about specifically what you
were supposed to interview Mr. Colindres on when
you went to Kentucky?

A. Yes.

Q. And what was your understanding of what you
were supposed to interview him on?
```

> A. The line of investigation would be consistent with the Nashville gang investigation as well as the homicides.
>
> Q. And what was off limits for which you were not supposed to investigate or interview him on?
>
> A. That would have been the -- his ongoing case in Kentucky that he was represented.

Transcript of Evidentiary Hearing [Dkt. 782 at Page ID # 7955-7956], Case No. 18-cr-293 (M.D. Tenn. March 24, 2023),

Appellant sought to suppress the fruits of these custodial interrogations in subsequent pre-trial motions, but the district court declined to recognize and remedy these egregious violations of his constitutional rights.

Because the denial of those applications is inconsistent with well-established precedent concerning the scope of a criminal defendants Fifth Amendment rights, the judgment of conviction must be vacated, and the case should be remanded for further proceedings.

## **STANDARD OF REVIEW**

When considering the propriety of a district court's ruling on a pre-trial motion to suppress evidence, this Court reviews factual determination sfor clear error and legal conclusions de novo. *United States v. Pacheco*, 841 F.3d 384, 389 (6th Cir. 2016).

**ARGUMENT**

**I.   *MIRANDA* WAIVERS DO NOT EFFECTUATE A WHOLESALE RELINQUISHMENT OF DEFENDANTS' FIFTH AMENDMENT RIGHTS**

The Fifth Amendment provides, in relevant part, that "[n]o person shall be held to answer for a capital offense… [except upon] presentment or indictment," nor "compelled to be a witness against himself," or otherwise "deprived of … liberty… without due process of law." *See also Corley v. United States*, 556 U.S. 303 (2009); *Miranda v. Arizona,* 384 U.S. 436 (1966); *Brown v. Illinois*, 422 U.S. 590 (1975).

While the circumstances surrounding Appellant's statements to law enforcement arguably violated all three of those enumerated rights, the threshold for a Fifth Amendment violation is not an all-or-nothing test whereby defendants must prove they've been deprived of each enumerated right in order to trigger the remedy.

The denial of Appellant's suppression motion was premised upon the pervasive, but mistaken, view that—absent coercion—a valid *Miranda* waiver is nearly always sufficient to inoculate otherwise tainted evidence from constitutional challenge:

> ```
> Although this situation was not great for the
> defendant… I mean, it's always uncomfortable… to
> be in custody… That doesn't make it coercive…
> ```
>
> ```
> This to me was—and I'm going to speak candidly.
> It's a situation here where there's enough gray
> area, [that] reasonable people can disagree
> about what is even meant by the term 'coercion,'…
> [so] I don't begrudge the defense for bringing
> the motion.
> ```
>
> ```
> I will say, on balance… what strikes me in an
> overall sense, even though I've gotten into the
> weeds on the various factors, the overall sense
> I got is that this was relatively routine in
> terms of… what had happened here. Now, how much
> does that really help? … what I mean when I say
> it looks routine, to me, it looks like ordinary
> circumstances that are the kinds of things that
> would not stand out as tending to make someone
> in an objective sense objectively make someone
> feel like they were being coerced.
> ```
>
> ```
> That's probably as clear as I can sort of state
> an overall impression of this motion.
> ```

Transcript of Evidentiary Hearing [Dkt. 782 at Page ID # 8093, 8097], Case No. 18-cr-293 (M.D. Tenn. August 10, 2024)

As the district court correctly observed, Appellants' statements to law enforcement were not "involuntary," as a matter of law, because the factual circumstances surrounding the custodial interrogations in Kentucky were not objectively "coercive" within the meaning given to those terms under *Miranda* and its progeny.

In order to pass muster under the Fifth Amendment, however, a confession must be voluntary *and* given within a "reasonable" amount of time between the point of arrest and presentment. *See Upshaw v. United States,* 335 U.S. 410 (1948); *accord United States v. McDowell*, 687 F.3d 904, 909 (7th Cir.2012). And even a voluntary confession given during in the course of an unlawful detention must be suppressed.

Setting aside the question of whether his statements were voluntary in the sense of not having been "compelled," the circumstances in which they were given were in direct contravention to Appellant's right of presentment under *Corley v. United States*, 556 U.S. 303 (2009); and well within the plausible ambit of

circumstances that giving rise to a claim of unlawful arrest under *Brown v. Illinois*, 422 U.S. 590 (1975).

Moreover, because prosecutors in Nashville had clearly signaled a "commitment to prosecute" by engaging "judicial machinery" to seek a warrant for his arrest, his right to counsel had clearly "attached" to the substantive offenses charged in the instant case. *Rothgery v. Gillespie Cnty., Tex.,* 554 U.S. 191, 212 (2008) (citing *Brewer v. Williams,* 430 U.S. 387, 398–399 (1977); *Michigan v. Jackson*, 475 U.S. 625, 629, n. 3 (1986)).

As the Supreme Court explained in *Corley*, the presentment rule is not just "some administrative nicety… the rule has always mattered in very practical ways and still does." 556 U.S. at 320. In *McNabb v. United States*, 318 U.S. 332 (1943) and *Mallory v. United States*, 354 U.S. 449 (1957) the Supreme Court gave effect to the Fifth Amendment's right of presentment by holding that an arrested person's confession is inadmissible, if given after an unreasonable delay in bringing him before a judge. The so-called *McNabb–Mallory* rule has since been codified by Rule 5 of the Federal Rules of

Criminal Procedure,—and repeatedly reaffirmed by the Supreme Court. See Fed. R. Crim. P. 5 (a)(1)(A) ("A person making an arrest within the United States must take the defendant without unnecessary delay before a magistrate judge"); *accord Corley*, 556 U.S. at 308-309 (explaining that the rule can also be understood as applying to statements obtained during periods of detention that violate the Rule 5); *see also United States v. Alvarez–Sanchez,* 511 U.S. 350, 354 (1994).

Similarly, the exclusionary rule set forth in *Brown v. Illinois*, 422 U.S. 590 (1975) effectuates the Fifth Amendment right against unwarranted or otherwise unreasonable deprivations of liberty by applying the exclusionary rule's suppression remedy to incriminating evidence obtained incident to an unlawful arrest. But the more recent *Corley* decision is particularly instructive in its reiteration of the longstanding principle that even "voluntary confessions must be suppressed if given during an unreasonable delay in presentment." 556 U.S. at 313. In any case, the relevant analysis turns on a reasonableness inquiry.

Under *Corley,* the question is whether the delay in presenting Appellant with formal charges upon presentment before a magistrate or the issuance of an indictment was reasonable.

At the outset of that inquiry, courts must inquire into the length of any such delay. Pursuant to 18 U.S.C. § 3501, anything under six hours is presumptively reasonable. "If the confession occurred before presentment and beyond six hours, however, the court must decide whether delaying that long was unreasonable or unnecessary under the *McNabb–Mallory* cases, and if it was, the confession is to be suppressed." *Corley v. U.S.,* 556 U.S. 303, 322 (2009).

Here, ambiguities in the record preclude any definitive conclusion regarding the exact date on which Appellant was placed in custody pursuant to the offenses charged in the instant case (as opposed to that portion of his detention that can be reasonably attributed to his arrest on the "unrelated" Kentucky offenses).

To the extent that prosecutors claim that an arrest warrant had already been issued in connection with the alleged homicides for

those offenses in Nashville at the time of his roadside arrest for drug possession in Hopkinsville, Kentucky on October 9, 2017, the relevant custodial period should arguably include and flow from that date. Alternatively, the triggering event would be whenever the decision was made to continue his detention, beyond the period during which he would have been eligible for pre-trial release on the far less serious drug- and traffic- related offenses in Kentucky.

If Appellant's prolonged detention at the Kentucky facility was attributable to a hold instituted by reason of the pending charges in Nashville, for example, the question would be when that hold was instituted.

Either way, it is indisputable that the speedy presentment clock had started to run when federal and state agents showed up in Kentucky to speak with Appellant about the charges lodged against him in Nashville on February 28, 2018.

Yet prosecutors waited another six months until August 8, 2018 to indict him and still conducted yet another custodial

interrogation to elicit more incriminating statements from Appellant in the interim.[5]

Absent extenuating circumstances that cannot be discerned from the record, that delay was presumptively invalid under the principles espoused in the *McNabb-Mallory* line of cases. *See Garcia–Hernandez,* 569 F.3d at 1106 ("A delay "is unreasonable and unnecessary when it is 'of a nature to give opportunity for the extraction of a confession.' ") Accordingly, the fruits of the unlawful custodial interrogations at the Christian County Detention facility in Kentucky are inadmissible.

Moreover, since Appellant would not have pled guilty but-for the mountain of evidence created by and through those unlawful circumstances, his plea and any accompanying waivers of his rights were also invalid.

---

[5] *See* Federal Indictment [Dkt. 1] as to Luis Colindres in *U.S. v Flores, et al,* No. 18-cr-200 (M.D. Tenn. Aug 08, 2018).

## CONCLUSION

For these reasons, the judgment of conviction must be vacated, and the case should be remanded for further proceedings with instructions that all fruits of the custodial interrogations in Kentucky are inadmissible.

Respectfully submitted,

By: /s/ Agatha M. Cole
Agatha M. Cole
BEVERLY PLLC
43 West 43rd Street, Suite 159
New York, NY 10036
(828) 773-2628
agatha@beverlypllc.com

*Counsel for Appellant-Defendant,
Luis Colindres*