No. 23-5988

IN THE

# United States Court of Appeals for the Sixth Circuit

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

– v. –

LUIS COLINDRES,

*Defendant-Appellee*

On Appeal from the United States District Court
for the Middle District of Tennessee (J. Richardson)
Case No's. 3:18-CR-00200 and 3:18-CR-00293

## APPELLANT'S PRINCIPAL BRIEF

Agatha M. Cole
BEVERLY PLLC
43 West 43rd Street, Suite
New York, NY 10036
(828)773-2628
agatha@beverlypllc.com

*Counsel for Defendant-Appellant, Luis Colindres*

## CORPORATE DISCLOSURE

Pursuant to 6 Cir. R. 26.1(a), the undersigned counsel certifies that no corporate disclosure is necessary because Defendant-Appellant, Luis Colindres, is a natural person appealing his conviction from a federal criminal proceeding.

By:   _/s/ Agatha M. Cole_
Agatha M. Cole
BEVERLY PLLC
43 West 43rd Street, Suite 159
New York, NY 10036
(828) 773-2628
agatha@beverlypllc.com

*Counsel for Defendant-Appellant,*
*Luis Colindres*

# TABLE OF CONTENTS

REQUEST FOR ORAL ARGUMENT ................................................ 1

JURISDICTIONAL STATEMENT ..................................................... 1

STATEMENT OF THE ISSUE ......................................................... 1

STATEMENT OF THE CASE .......................................................... 2

STANDARD OF REVIEW ............................................................... 9

ARGUMENT ................................................................................... 9

   I.   APPELLANT'S *MIRANDA* WAIVER DID NOT
       EFFECTUATE A WHOLESALE RELINQUISHMENT OF
       HIS FIFTH AMENDMENT RIGHTS ..................................... 9

CONCLUSION ............................................................................. 22

CERTIFICATES

*Certificate of Compliance* .................................................... 23

*Certificate of Service* ........................................................... 24

ADDENDUM

*Designation of Relevant Docket Entries* ............................ 25

# TABLE OF AUTHORITIES

## Cases

*Brown v. Illinois*, 422 U.S. 590 (1975) .................................... 9, 13, 14

*Casey v. United States,*
   100 F.4th 34, 39 (1st Cir. 2024), *cert. denied*, No. 24-5715,
   2024 WL 4743153 (U.S. Nov. 12, 2024) ........................... 15, 16, 19

*Corley v. United States,*
   556 U.S. 303 (2009) ...........................................9, 11, 12, 14, 16, 19

*Mallory v. United States,*
   354 U.S. 449 (1957) ......................................................... 13, 16, 19

*McNabb v. United States,*
   318 U.S. 332 (1943) ......................................................... 13, 16, 19

*Miranda v. Arizona,*
   384 U.S. 436 (1966) ...................................1, 6, 9, 10, 11, 13, 14, 15

*Nix v. Williams,*
   467 U.S. 431, 441 (1984) .............................................................. 21

*Taylor v. Alabama,*
   457 U.S. 687 (1982) ..................................................................... 14

*United States v. Garcia-Hernandez,*
   569 F.3d 1100 (9th Cir. 2009) ...................................................... 20

*United States v. Leake,*
   95 F.3d 409, 412 (6th Cir. 1996) .................................................. 21

*United States v. Thompson,*
 772 F.3d 752............................................................................ 15, 20

*United States v. Waide,*
 60 F.4th 327, 338 (6th Cir. 2023) .................................................. 21

*United States v. Williams,*
 615 F.3d 657, 668 (6th Cir. 2010) .................................................. 21

*United States v. Pacheco,*
 841 F.3d 384 (6th Cir. 2016) ............................................................ 9

*Upshaw v. United States,*
 335 U.S. 410 (1948) ...................................................................... 20

*Wong Sun v. United States,*
 371 U.S. 471 (1963) ...................................................................... 21

## **Statutes**

18 U.S.C. § 3231 ...................................................................... 1

18 U.S.C. § 3501 .................................................................... 16

18 U.S.C. § 3742 ...................................................................... 1

28 U.S.C. § 1291 ...................................................................... 1

Fed. R. Crim. P. 5 .................................................................. 13

Fifth Amendment ............................................1, 8, 9, 11, 13, 14

Sixth Amendment ................................................................. 15

## REQUEST FOR ORAL ARGUMENT

This appeal presents important legal questions regarding the scope of a defendant's rights under the Fifth Amendment. Appellant respectfully submits that oral argument upon questioning before the Court would likely aid in the resolution of the case.

## JURISDICTIONAL STATEMENT

This appeal arises from a final judgment of conviction and sentence imposed by the United States District Court for the Middle District of Tennessee. The district court had jurisdiction pursuant to 18 U.S.C. § 3231. This Court has jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

## STATEMENT OF THE ISSUE

Does a valid *Miranda* waiver always inoculate otherwise tainted evidence from constitutional challenge under the Fifth Amendment?

## STATEMENT OF THE CASE

Appellant Luis Colindres was born on March 25, 1997, in the rural department of Olancho, Honduras.[1] He attended school until age 15, receiving the equivalent of a middle school education at Centro De Educacion Basica ("CEB") Manuel Bonilla[2]—and then briefly served in the Honduran military before migrating to the United States before migrating to the United States at age 19.[3]

---

[1]    *See* partial transcription / minutes from second custodial interrogation at Christian County Detention Center in Hopkinsville, Kentucky on May 8, 2018 [Case No. 18-cr-293, Doc. 432-4 at Page ID # 2007-09].

[2]    Although prosecutors repeatedly portrayed him as a high school graduate with some college-level coursework, the record makes clear that he only attended a rural school Manuel Bonilla up to age 15. *See, e.g.,* Transcript [Doc. 782 at Page ID # 8037-8040], Case No. 18-cr-293 (M.D. Tenn. Aug. 10, 2024) (testimony of Appellant, indicating that he attended *collegio* in Honduras until age 15); *But see id.* at Page ID # 8063 (prosecutor, arguing that "[t]his is someone that is essentially college-educated.")

[3]    *See* partial transcription / minutes from first custodial interrogation at Christian County Detention Center in Hopkinsville, Kentucky on February 28, 2018 [Case No. 18-cr-293, Doc. 432-2 at Page ID # 1986].

This appeal stems from his conviction on a conspiracy indictment, following a prolonged joint federal-state investigation into violent crimes attributed to the Mara Salvatrucha ("MS-13") gang in and around the Nashville area.

Appellant's name was added to the long list of targets in that investigation when the principal suspect in a double homicide sought to exculpate himself by implicating someone else. *See* Affidavit of Det. Baltimore (Sept. 29, 2017) (unsigned) in support of arrest warrant for Luis Colindres [Doc. 396-1, at Page ID # 1332] (stating that Oscar Delgado Flores told detectives at the Metro Nashville Police Department ("MNPD") that the gunman responsible for shooting two rival gang members at the Maple Crest apartment complex on September 27, 2017 was Luis Colindres).

Several days later, on October 9, 2017, Appellant was arrested and detained on ostensibly unrelated charges stemming from a routine traffic stop for driving 17 miles over the speed limit in Hopkinsville, Kentucky. But the circumstances surrounding that arrest are not entirely clear.

The record suggests that Appellant was pulled over for driving 17 miles over the speed limit and subsequently arrested on drug-related charges after a search of the vehicle produced a small amount of cocaine and drug-related paraphernalia.[4] In briefing before the district court, however, prosecutors represented that the Kentucky State Trooper who arrested Appellant also charged him with being a "fugitive" upon learning that an arrest warrant had already been issued in connection with the homicide investigation out of Nashville. *See* Government's Opp. to Suppression Motion [Doc. 432 at Page ID # 1962], Case No. 18-cr-293 (M.D. Tenn. Mar. 10, 2023)

---

[4] The state court docket sheet from Kentucky [Doc. 80-1, Page ID # 254-255] shows that Appellant was charged with: (1) possession of a controlled substance, KY Rev Stat § 218A.1415; (2) tampering with physical evidence, KY Rev Stat § 524.100; (3) drug paraphernalia, KY Rev Stat § 218A.500; (4) expired registration plates, KY Rev Stat § 186.10; (5) failure to produce insurance card, KY Rev Stat § 304.39-117; (6) improper lane usage, KY Rev Stat § 189.300; (7) Speeding at 17 MPH over the limit, KY Rev Stat § 189.390; and (8) failure to wear a seatbelt, KY Rev Stat § 189.125.

(representing that an arrest warrant was sought and obtained in Nashville on September 29, 2017).[5]

For reasons that are equally unclear from the record, Appellant was subsequently held in the custody of state officials at the Christian County Detention Center in Hopkinsville, Kentucky, for approximately 15 months (451 days), before being transferred to the U.S. District Court for the Middle District of Tennessee for his initial appearance and arraignment on federal charges, on January 3, 2019.[6]

---

[5]    The only other document in the record on that point is an unsigned affidavit prepared in support of an application for said arrest warrant, which shows no indication of actually having been filed in or approved by any court in Nashville. *See* Affidavit of Det. Baltimore (Sept. 29, 2017) (unsigned) in support of arrest warrant for Luis Colindres [Doc. 396-1, at Page ID # 1332].

[6]    The record suggests that the Kentucky state court approved cash bail in the amount of $10,000 on December 1, 2017 [Doc. 80-1, Page ID # 254-255], but Appellant remained in custody at the Kentucky facility well after that date, up to and until January 3, 2019, when federal prosecutors initiated his transfer to the Middle District of Tennessee. *See* Execution of Arrest Warrant (documenting transfer from Christian County Detention Center), Initial Appearance and Arraignment [Doc. 23, 24, at Page ID # 58-59], No. 18-cr-200 (M.D. Tenn. Jan. 3, 2019).

During that time period, federal and state agents had unfettered access to Appellant, which they seized as an opportunity to elicit hundreds of pages worth of recorded testimonial statements—outside the presence of his attorneys—over the course of two separate custodial interrogations at the Kentucky detention facility where he was being held on February 28, 2018 and May 8, 2018.[7]

As HSI Special Michael Agent Perez later recounted, federal prosecutors in Nashville approved, and possibly even encouraged these visits, despite knowing that Appellant was represented by counsel; they just cautioned the agents to avoid "talk[ing] about the Kentucky charges" since they knew that "he was [already] represented by an attorney" on those offenses:

> Q. Did you have a conversation with … members of
> the prosecution team about specifically what you

---

[7]    *See* Partial transcription / minutes of custodial interrogations held at Christian County Detention Center in Hopkinsville, Kentucky on February 28, 2018 [Doc. 432-2, Page ID # 1984-1999] and May 8, 2018 [Doc. 432-4 at Page ID # 2003-2010]; *see also* accompanying *Miranda* Waiver Form executed by Luis Colindres [Doc 432-3, Page ID # 2001].

were supposed to interview Mr. Colindres on when
you went to Kentucky?

A. Yes.

Q. And what was your understanding of what you
were supposed to interview him on?

A. The line of investigation would be consistent
with the Nashville gang investigation as well as
the homicides.

Q. And what was off limits for which you were
not supposed to investigate or interview him on?

A. That would have been the -- his ongoing case
in Kentucky that he was represented.

Transcript of Evidentiary Hearing [Doc. 782 at Page ID # 7955-

7956], Case No. 18-cr-293 (M.D. Tenn. March 15, 2023),

Appellant sought to suppress the fruits of these custodial

interrogations in subsequent pre-trial motions, but the district court

declined to recognize and remedy these egregious violations of his constitutional rights.[8]

Because the denial of those applications is inconsistent with well-established precedent concerning the scope of a criminal defendants Fifth Amendment rights, the judgment of conviction must be vacated, and the case should be remanded for further proceedings.

---

[8] *See* First Motion to Suppress [Doc. 65], Case No. 18-cr-200 (M.D. Tenn Nov. 14, 2019) and Order [Doc. 84, Page ID # 277] ("In light of additional [anticipated] discovery productions … [the] pending motions are denied without prejudice to refiling at a later date."); *See also* Second (renewed) motion to suppress statements from custodial interrogations at Christian County Detention Facility in Hopkinsville, Kentucky [Doc. 396], Case No. 18-cr-293 (M.D. Tenn. February 24, 2023); Transcript of Suppression Hearing [Doc. 782], Case No. 18-cr-293 (M.D. Tenn. May 15, 2023) (denying motion in ruling from the bench at Page ID # 8092-8098).

## STANDARD OF REVIEW

When considering the propriety of a district court's ruling on a pre-trial motion to suppress evidence, this Court reviews factual determinations for clear error and legal conclusions de novo. *United States v. Pacheco*, 841 F.3d 384, 389 (6th Cir. 2016).

## ARGUMENT

I. **APPELLANT'S *MIRANDA* WAIVER DID NOT EFFECTUATE A WHOLESALE RELINQUISHMENT OF HIS FIFTH AMENDMENT RIGHTS**

The Fifth Amendment provides, in relevant part, that "[n]o person shall be held to answer for a capital offense… [except upon] presentment or indictment," nor "compelled to be a witness against himself," or otherwise "deprived of … liberty… without due process of law." *See also Corley v. United States*, 556 U.S. 303 (2009); *Miranda v. Arizona,* 384 U.S. 436 (1966); *Brown v. Illinois*, 422 U.S. 590 (1975).

While the circumstances surrounding Appellant's statements to law enforcement arguably violated all three of those enumerated rights, the district court only considered whether the nature and

circumstances of the custodial interrogations was so coercive that the statements could be deemed as having been obtained in violation of his right against "compelled" self-incrimination. *See generally* Transcript of Supression Hearing [Doc. 782 at Page ID # 8092-8098], Case No. 18-cr-293 (M.D. Tenn. August 10, 2024).

Specifically, the denial of Appellant's suppression motion was premised upon the pervasive, but mistaken, view that — absent coercion — a valid *Miranda* waiver is nearly always sufficient to inoculate otherwise tainted evidence from constitutional challenge:

> This does seem to be rather ... routine stuff going on. Agents come in, they identify themselves, they provide *Miranda* warnings...
>
> And then they have a discussion. It may last along time. No request for things like food or sleep or a break were shown to have been denied. And, you know, the agents have important things to talk about, so they're going to talk about it for a while...
>
> ... [A]lthough this situation was not great for the defendant, I mean, it's always uncomfortable ... to be in custody ... [but] that doesn't make it coercive... defendant's will was not overborne.

*Id.* at Page ID # 8092-8093.

> [T]here's enough gray area, [that] reasonable
> people can disagree about what is even meant by
> the term 'coercion,' ... [so] I don't begrudge
> the defense for bringing the motion.
>
> [But] I will say, on balance... the overall sense
> I got is that this was relatively routine ...
> like ordinary circumstances that ... would not
> stand out as tending to make someone ... feel
> like they were being coerced.
>
> That's probably as clear as I can sort of state
> an overall impression of this motion.

*Id.* at Page ID # 8097-8098.

Simply put, the district court found the statements to be admissible because the factual circumstances surrounding the custodial interrogations in Kentucky were not objectively "coercive" within the meaning given to those terms under *Miranda* and its progeny.

But the admissibility of incriminating statements does not turn on the coercion inquiry alone. After all, "even a voluntary confession" must be suppressed when given in the course of an unlawful detention, or "during an unreasonable delay in presentment." *Corley v. United States,* 556 U.S. 303, 313 (2009). In order to pass muster under the Fifth Amendment, a statement must

therefore be voluntary *and* given under otherwise lawful conditions—meaning that it cannot be the product of an unlawful arrest or unreasonable delay between the point of arrest and presentment before a magistrate. *Id.*

The requirement that an arrestee be presented before a magistrate is not "just some administrative nicety… the rule has always mattered in very practical ways and still does." *Corley*, 556 U.S. at 320 (observing that the prompt presentment rule "stretches back to the common law, when it was 'one of the most important' protections 'against unlawful arrest'"). As the Supreme Court explained in *Corley,* "presentment is the point at which the judge is required to take several key steps to foreclose Government overreaching"; without it, "federal agents would be free to question suspects for extended periods before bringing them out in the open, and we have always known what custodial secrecy leads to." *Id.* ("No one with any smattering of the history of 20th-century dictatorships needs a lecture on the subject, and we understand the need even within our own system to take care against going too far."). In other

words, the purpose of the prompt presentment rule is to prevent law enforcement officials from secretly detaining individuals for lengthy periods and presenting them to a magistrate only after having successfully obtained a confession.

Just as *Miranda* and its progeny effectuated the right against self-incrimination by creating a suppression remedy for coerced confessions, the Fifth Amendment's rules concerning presentment and unlawful arrests are given effect through cases like *McNabb v. United States*, 318 U.S. 332 (1943), *Mallory v. United States*, 354 U.S. 449 (1957), and *Brown v. Illinois*, 422 U.S. 590 (1975).

In *McNabb v. United States*, 318 U.S. 332 (1943) and *Mallory v. United States*, 354 U.S. 449 (1957) the Supreme Court gave effect to the right of presentment by holding that an arrested person's confession is inadmissible, if given after an unreasonable delay in bringing him before a judge. The so-called *McNabb–Mallory* rule has since been codified by Rule 5 of the Federal Rules of Criminal Procedure, *see* Fed. R. Crim. P. 5 (a)(1)(A) ("A person making an arrest within the United States must take the defendant without

unnecessary delay before a magistrate judge")—and repeatedly reaffirmed by the Supreme Court. *See, e.g., Corley*, 556 U.S. at 308-309; *U.S. v. Alvarez–Sanchez*, 511 U.S. 350, 354 (1994). Similarly, the exclusionary rule set forth in *Brown v. Illinois*, 422 U.S. 590 (1975) effectuates the Fifth Amendment right against unwarranted or otherwise unreasonable deprivations of liberty by applying the exclusionary rule's suppression remedy to incriminating evidence obtained pursuant to an unlawful arrest. *See also Taylor v. Alabama,* 457 U.S. 687, 690 (1982) ("a confession obtained through custodial interrogation after an illegal arrest should be excluded unless intervening events break the causal connection between the illegal arrest and the confession so that the confession is 'sufficiently an act of free will to purge the primary taint.'") (quoting *Brown v. Illinois,* 422 U.S. at 602). Under either line of cases, the Fifth Amendment analysis is wholly independent from any finding made pursuant to *Miranda's* prophylactic against self-incrimination.

Here, as in *Corley,* "the [federal] agents' repeated arguments sold [Appellant]…on the benefits of cooperating with the

Government, and he signed a form waiving his *Miranda* rights." 556 U.S. at 311. But that doesn't end the analysis. *See also Casey v. United States,* 100 F.4th 34, 39 (1st Cir. 2024), *cert. denied*, No. 24-5715, 2024 WL 4743153 (U.S. Nov. 12, 2024); *U.S. v. Thompson*, 772 F.3d 752, 762 (3d Cir. 2014).

Setting aside the question of whether Appellant's statements were voluntary in the sense of not having been "compelled," the circumstances in which they were given were in direct contravention to Appellant's right to speedy presentment and well within the ambit of circumstances giving rise to a claim of unlawful arrest.[9]

---

[9] If an arrest warrant was, in fact, issued out of Nashville, on September 29, 2017, as the prosecution represented in briefing before the district court (*see supra* note 5 and accompanying text), Appellant reserves the right to appeal the district court's denial of his motion to suppress the same statements as having been obtained in violation of his Sixth Amendment rights on reply and/or in post-conviction proceedings. *See Rothgery v. Gillespie Cnty., Tex.,* 554 U.S. 191, 212 (2008) (citing *Brewer v. Williams*, 430 U.S. 387, 398–399 (1977); *Michigan v. Jackson*, 475 U.S. 625, 629, n. 3 (1986)). The only reason why that argument is not been made herein is the lack of clarity about whether that arrest warrant was, in fact, presented to and/or approved by a court in Nashville.

With respect to the *McNabb-Mallory* rule, as reiterated in *Corley,* 556 U.S. 303, the relevant inquiry is whether the delay in presenting Appellant with formal charges before a magistrate was reasonable. Pursuant to 18 U.S.C. § 3501, a voluntary confession that is given within less than six hours after being taken into custody is presumptively reasonable. In cases involving custodial statements given at any point beyond that, however, the court must examine the circumstances surrounding the delay in presentment. *Corley,* 556 U.S. at 322 ("If the confession occurred … beyond six hours [of being in custody]… the court must decide whether delaying that long was unreasonable or unnecessary under the *McNabb–Mallory* cases, and if it was, the confession is to be suppressed.").

Where, as here, the defendant is already in state custody, the length of any delay in presentment is measured from the time when federal agents assume "jurisdiction," by exerting some level of custodial control. *See Casey v. United States,* 100 F.4th 34, 45 (1st Cir. 2024), *cert. denied*, No. 24-5715, 2024 WL 4743153 (U.S. Nov. 12, 2024) (explaining that the "prompt presentment clock" begins to

run when federal agents assume "jurisdiction" over a defendant being held by state officials); *id.* at 46 ("[I]f federal authorities could escape … [this] obligation … [by delaying the transfer of] custody … from state authorities, the protection afforded by the prompt presentment requirement would be severely diminished.").

Due to ambiguities in the record, it is concededly challenging to ascertain the exact date on which federal agents began assuming control such that custodial jurisdiction over Appellant had officially transitioned from Kentucky state officials to federal prosecutors and their agents (as opposed to that portion of his detention that can be reasonably attributed to his arrest on the "unrelated" Kentucky offenses).

To the extent that prosecutors claim an arrest warrant had already been issued in Nashville at the time of his roadside arrest for drug possession in Hopkinsville, Kentucky,[10] the relevant custodial period should arguably include and flow from that date.

---

[10]     *See* Government's Opp. to Suppression Motion [Doc. 432 at Page ID # 1962], Case No. 18-cr-293 (M.D. Tenn. Mar. 10, 2023)

Alternatively, the triggering event would be whenever the decision was made to keep Appellant in custody at the Christian County Detention Facility, beyond the period during which he was deemed eligible for pre-trial release on the far less serious drug- and traffic- related Kentucky offenses.[11] If Appellant's prolonged detention at the Kentucky detention facility was attributable to a federal hold or detainer out of Nashville, for example, the critical question is when and why that hold was instituted—and also, potentially, whether that period of detention was itself lawful, if Appellant was held without being formally charged, solely at the request of Nashville-based agents.

Either way, it is indisputable that the speedy presentment clock had started running when federal and state agents showed up to speak with Appellant at the Kentucky facility on February 28,

_____

(representing that an arrest warrant was sought and obtained in Nashville on September 29, 2017).

[11]    *See supra* note 6 and accompanying text regarding Appellant's continued detention in at the Christian Country Detention Facility in Hopkinsville, Kentucky, even after the state court approved his being released on bail.

2018, and thereafter, when federal agents showed up to conduct a second custodial interrogation on May 8, 2018.[12]

By their own admission, federal prosecutors believed there was sufficient probable cause to arrest and charge Appellant as of September 29, 2017, well before either of these interactions in Kentucky.[13]   And yet, federal prosecutors waited until August 8, 2018 to issue the indictment—and even then, Appellant was not presented before a magistrate until January 3, 2019.[14]

Absent circumstances that cannot be discerned from the record, that delay was presumptively invalid under the principles espoused in the *McNabb-Mallory* line of cases. *See Corley*, 129 S.Ct. at 1563 (citing *Mallory,* 354 U.S. at 455–56; *see also Casey v. United States,* 100 F.4th 34, 48 (1st Cir. 2024) ("Delaying presentment … to

---

[12]     *See supra* note 7 and accompanying text.

[13]     *Supra* note 10.

[14]     *See* Federal Indictment [Doc. 1] as to Luis Colindres in *U.S. v Flores, et al,* No. 18-cr-200   (M.D. Tenn. Aug. 8, 2018); Initial Appearance and Arraignment [Doc. 24, at Page ID # 58-59], No. 18-cr-200 (M.D. Tenn. Jan. 3, 2019).

continue building a case against a detained individual is directly at odds with [the] *McNabb-Mallory* rule"); *U.S. v. Thompson*, 772 F.3d 752, 761 (3d Cir. 2014) ("Simply put, a delay in presentment of a defendant before a magistrate judge is unreasonable and unnecessary when it is 'of a nature to give opportunity for the extraction of a confession.'") (quoting *Mallory*, 354 U.S. at 455); *accord U.S. v. Garcia-Hernandez*, 569 F.3d 1100, 1106 (9th Cir. 2009). And as the Supreme Court observed in *Upshaw v. United States,* 335 U.S. 410 (1948), the notion that Appellant's statements were the product of "routine" police practice has no impact on the analysis. *See Upshaw*, 335 U.S. at 414 ("The argument was made … that this method of arresting, holding, and questioning people on mere suspicion, was in accordance with the 'usual police procedure of questioning a suspect… However usual this practice [may be], it is in violation of law, and confessions thus obtained are inadmissible.");

Accordingly, the fruits of the custodial interrogations at the Christian County Detention Facility in Kentucky should have been

excluded. Moreover, since Appellant would not have pleaded guilty but-for the denial of his motion to suppress, his plea and any accompanying waivers of his rights were also necessarily invalid. *See, e.g., Wong Sun v. United States,* 371 U.S. 471 (1963); *Nix v. Williams*, 467 U.S. 431, 441 (1984); *accord U.S. v. Waide*, 60 F.4th 327, 338 (6th Cir. 2023); *U.S. v. Williams,* 615 F.3d 657, 668 (6th Cir. 2010); *U.S. v. Leake,* 95 F.3d 409, 412 (6th Cir. 1996).

## CONCLUSION

For these reasons, the judgment of conviction must be vacated, and the case should be remanded with instructions that all fruits of the custodial interrogations are inadmissible.

Respectfully submitted,

By:    /s/ *Agatha M. Cole*
       Agatha M. Cole
       BEVERLY PLLC
       43 West 43rd Street, Suite 159
       New York, NY 10036
       (828) 773-2628
       agatha@beverlypllc.com

       *Counsel for Defendant-Appellant,*
                    *Luis Colindres*

## CERTIFICATE OF COMPLIANCE

The foregoing brief complies with the typeface and the type-style requirements of Fed. R. App. P. 32, because it has been prepared in Century Schoolbook (font size 14) and does not exceed 30-pages in length.

By:       <u>/s/ *Agatha M. Cole*</u>
Agatha M. Cole
BEVERLY PLLC
43 West 43rd Street, Suite 159
New York, NY 10036
(828) 773-2628
agatha@beverlypllc.com

*Counsel for Defendant-Appellant,*
*Luis Colindres*

## CERTIFICATE OF SERVICE

The foregoing brief was served on counsel for all parties via the court's electronic filing system.

By:     */s/ Agatha M. Cole*
    Agatha M. Cole
    BEVERLY PLLC
    43 West 43rd Street, Suite 159
    New York, NY 10036
    (828) 773-2628
    agatha@beverlypllc.com

    *Counsel for Defendant-Appellant,*
    *Luis Colindres*

## Designation of Relevant Docket Entries

| Date | Description | Doc. No. | Page ID # | District Court Docket |
|------|-------------|----------|-----------|----------------------|
| **Arrest, custodial interrogations, etc.** | | | | |
| September 29, 2017 | Affidavit (unsigned) of Det. Baltimore, Metro Nashville Police Department ("MNPD"), prepared in support of arrest warrant application for Luis Colindres. (*** appears to be a draft, as there are no signatures or stamps indicating that it was submitted or approved by court ***) | Doc. 396-1 | Page ID # 1332-1333 | M.D. Tenn. No. 3:18-cr-293 |
| December 1, 2017 | Kentucky State Court Docket Sheet in *Commonwealth v. Colindres,* Chrisian County Circuit Court, No. 17-cr-00718 ("*Cash [bail] ... set on 12/01/2017* ") | Doc. 432-1 | Page ID # 1981-1982 | M.D. Tenn. No. 3:18-cr-293 |
| February 28, 2018 | Partial transcription / minutes from recording of CUSTODIAL INTERRROGATION #1 at Christian County Detention Center in Hopkinsville, Kentucky | Doc. 432-2 | Page ID # 1984-1999 | M.D. Tenn. No. 3:18-cr-293 |
| | U.S. Dep't of Homeland Security, Immigration and Customs Enforcement ("ICE"), MIRANDA WAIVER Form (signed by Luis Colindres at 11:20 on 2/28/2019) | Doc. 432-3 | Page ID # 2001 | M.D. Tenn. No. 3:18-cr-293 |
| May 8, 2018 | Partial transcription / minutes from recording of CUSTODIAL INTERRROGATION #2 at Christian County Detention Center in Hopkinsville, Kentucky | Doc. 432-4 | Page ID # 2003-2010 | M.D. Tenn. No. 3:18-cr-293 |
| **First Federal Indictment and Related Proceedings in *U.S. v. Flores, et al.,* M.D. Tenn Case No. 3:18-cr-200** | | | | |
| August 8, 2018 | INDICTMENT against Luis Colindres and Oscar Delgado Flores in *U.S. v. Flores, et al.,* M.D. Tenn Case No. 3:18-cr-200 | Doc. 1 | Page ID # 1-6 | M.D. Tenn No. 3:18-cr-200 |
| January 3, 2019 | Transfer from Christian County Detention Center to U.S. Marshalls; INITIAL APPEARANCE and ARRAIGNMENT before magistrate (appointment of counsel and Spanish interpreter, pleads not guilty) | Doc. 23-24 | Page ID # 58-59 | M.D. Tenn No. 3:18-cr-200 |

| September 19, 2019 | LETTER from Luis Colindres requesting information about trial date and expressing opposition to continuance *("estoy listo … no kiero mas continuo solo kiero terminar mi caso")* | Doc. 64 | Page ID # 191 | M.D. Tenn No. 3:18-cr-200 |
|---|---|---|---|---|
| November 14, 2019 | FIRST MOTION TO SUPRESS statements from custodial interrogations at Christian County Detention Facility in Hopkinsville, Kentucky | Doc. 65 | Page ID # 194-203 | M.D. Tenn No. 3:18-cr-200 |
| December 2, 2019 | Government RESPONSE in Opposition re (Doc. 65) Def's Motion to Suppress | Doc. 80 | Page ID # 242-251 | M.D. Tenn No. 3:18-cr-200 |
| January 7, 2020 | ORDER DENYING FIRST MOTION TO SUPRESS (Doc. 65) WITHOUT PREJUDICE *("In light of additional discovery … and the continuance of the trial in this case to 11/3/2020, Defendant's pending motions are denied without prejudice to refiling at a later date.")* | Doc. 84 | Page ID # 277 | M.D. Tenn No. 3:18-cr-200 |
| October 13, 2020 | LIMITED WAIVER OF SPEEDY TRIAL rights (consents to another continuance *"for 70 days only "* ) | Doc. 102-1 | Page ID # 308 | M.D. Tenn No. 3:18-cr-200 |
| October 18, 2020 | LETTER from Luis Colindres reiterating opposition to any further continuances | Doc. 104 | Page ID # 316-317 | M.D. Tenn No. 3:18-cr-200 |
| October 28, 2020 | ORDER *("The Court received a letter from Luis Colindres stating concerns regarding the continuance of the trial in this case [Doc. 104]. Counsel …shall consult with him and file a response.")* | Doc. 105 | Page ID # 319 | M.D. Tenn No. 3:18-cr-200 |
| November 16, 2020 | MOTION TO WITHDRAW filed by defense counsel, Patrick McNally and Stephanie Ritchie Mize | Doc. 107 | Page ID # 322 | M.D. Tenn No. 3:18-cr-200 |
| December 17, 2020 | JOINT MOTION (defense counsel joins in moving for another continuance, notwithstanding Colindres' continued objections to extending trial date) | Doc. 117 | Page ID # 342-345 | M.D. Tenn No. 3:18-cr-200 |
| December 21, 2020 | ORDER approving defense counsel's motion to withdraw, appointing new counsel, resetting trial dates | Doc. 122 | Page ID # 350 | M.D. Tenn No. 3:18-cr-200 |
| December 29, 2020 | ORDER APPOINTING CJA PANEL ATTORNEY, Kyle Mothershead | Doc. 124 | Page ID # 354 | M.D. Tenn No. 3:18-cr-200 |
| December 18, 2020 | ORDER TO CONTINUE *("Jury Trial is reset for 6/29/2021")* | Doc. 125 | Page ID # 355-356 | M.D. Tenn No. 3:18-cr-200 |

| May 18, 2021 | LETTER from Luis Colindres to district court (untranslated) | Doc. 154 | Page ID # 418-424 | M.D. Tenn No. 3:18-cr-200 |
| June 1, 2021 | ORDER TO CONTINUE ("*Defendant ... [does] not agree to a continuance of the trial date... [But] the Court CONTINUED the trial ... to November 2, 2021*.") | Doc. 157 | Page ID # 428-430 | M.D. Tenn No. 3:18-cr-200 |

| **Superseding Indictment and Related Proceedings in *U.S. v. Ochoa, et al.*, M.D. Tenn Case No. 3:18-cr-293** | | | | |
|---|---|---|---|---|
| July 26, 2021 | SUPERSEDING INDICTMENT and case consolidation into larger conspiracy against nine defendants in *U.S. v. Ochoa, et al.*, M.D. Tenn Case No. 3:18-cr-293 | Doc. 150 | Page ID # 404-476 | M.D. Tenn. No. 3:18-cr-293 |
| February 24, 2023 | SECOND (RENEWED) MOTION TO SUPPRESS statements from custodial interrogations at Christian County Detention Facility in Hopkinsville, Kentucky | Doc. 396 | Page ID # [N/A] | M.D. Tenn. No. 3:18-cr-293 |
| March 10, 2023 | Government RESPONSE in Opposition re (Doc. 396) Def's Motion to Suppress | Doc. 432 | Page ID # 1961-1978 | M.D. Tenn. No. 3:18-cr-293 |
| March 15, 2023 | TRANSCRIPT of Hearing on (Doc. 396) Motion to Suppress statements from custodial interrogations | Doc. 782 | Page ID # 7936-8103 | M.D. Tenn. No. 3:18-cr-293 |
| March 16, 2023 | ORDER DENYING Motion to Suppress (Doc. No. 396 ) for reasons stated on the record at hearing | Doc. 449 | Page ID # 2053 | M.D. Tenn. No. 3:18-cr-293 |
| April 13, 2023 | TRANSCRIPT of Hearing re Plea Agreement | Doc. 678 | Page ID # 7178-7233 | M.D. Tenn. No. 3:18-cr-293 |
| October 25, 2023 | TRANSCRIPT of Sentencing Hearing | Doc. 682 | Page ID # 7237-7291 | M.D. Tenn. No. 3:18-cr-293 |
| October 26, 2023 | STATEMENT OF REASONS re Sentence | Doc. 659 | Page ID # 7108-7111 | M.D. Tenn. No. 3:18-cr-293 |